# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOUSING IS A HUMAN RIGHT, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>THE COUNTY OF ORANGE, *et al.*,,<br><br>　　　　Defendants. | CASE NO. SACV 19-388 DOC (JDEx)<br><br>ORDER GRANTING MOTION TO RECUSE |

On May 24, 2019, defendants City of Aliso Viejo, City of San Juan Capistrano, and City of San Clemente ("City Movants") filed a Motion to Disqualify the assigned District Judge, the Honorable David O. Carter. (Docket No. 42.) Plaintiffs Housing Is A Human Right Orange County, *et al.* ("Housing Plaintiffs") have filed an opposition (Docket No. 47), and the City Movants have replied (Docket No. 49.)

Pursuant to General Order 19-03, the Motion was assigned to the undersigned for decision. (Referral of Motion to Disqualify Judge, May 24, 2019; Docket No. 46.)

For the reasons set forth below, the Court grants the Motion.

I. Background.

This action is brought by several homeless individuals and organizations who advocate for the homeless. Proceeding under various Constitutional Amendments, including the Fourth, Fifth, Eighth, and Fourteenth Amendments, the federal civil rights statute, 42 U.S.C. § 1983, and various state statutory and constitutional provisions, the Housing Plaintiffs seek broad relief for the homeless of Orange County. The relief sought includes enjoining various municipal "anti-camping" ordinances and compelling the municipal defendants to provide shelter for the homeless. (Complaint, Prayer.) The First Amended Complaint seeks similar relief. (Docket No. 17.)

Although the action was initiated on February 27, 2019 (Docket No. 1), the Housing Plaintiffs did not seek issuance of summonses for the City Movants until May 23, 2019. (Docket Nos. 56, 57, 59.) The City Movants made their first appearance with the filing of the present Motion. (Docket No. 41, 44, 45.)

In January 2018, a similar suit was brought against the County of Orange and municipal defendants in the Northern and Central part of the County, Orange County Catholic Worker v. Orange County, SACV 18-155 (DOC) ("Catholic Worker"). In that action, with the consent of the parties, the District Judge engaged in extensive *ex parte* communications with the parties and others inside and outside of government, and conducted fact finding tours to homeless encampments along the Santa Ana River and in the Santa Ana Civic Center. The District Judge also invited the parties in that case and others to town hall sessions

at the Court to further the goal of a county-wide solution. The goal of the District Judge was to broker a collaborative, county-wide solution to the homeless problem. The City Movants do not fault the extensive efforts in which the District Judge engaged to promote an end to homelessness in Orange County. Indeed, they praise him. (Motion, p. 1; Reply, p. 3.) Although a number of cities have settled, the Catholic Worker action is still pending, and the District Judge has under submission a motion to enjoin certain municipal anti-camping ordinances and other conduct affecting the homeless. (Catholic Worker, Docket No. 16.)

This case was transferred to the District Judge under the District's "low-number" rule, which seeks to place before the same judge later cases raising similar legal or factual issues where such a transfer would promote efficiency and avoid duplication of judicial efforts. (Docket No. 6; General Order 16-5.)

The City Movants have three main complaints: First, in the course of the Catholic Worker action, with the consent of the parties, the District Judge has engaged in *ex parte* communications, including with some of the parties in this action, to which the City Movants have not consented. Second, the District Judge has made statements about the City Movants which they contend would cause a reasonable observer to reasonably conclude that the District Judge is not impartial toward the City Movants. Third, the District Judge has commented on the enforceability of the ordinances at issue. The Court discusses these contentions below.

I. Disqualification under Section 455.

Section 455 of Title 28 is the principal recusal statue.

A. <u>Section 455(a).</u>

Section 455(a) provides a broad, fact-driven rule for disqualification: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The fact that a judge has made rulings adverse to a party, standing alone, is not a basis for disqualification. <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994); <u>United States v. Hernandez-Escarsega</u>, 886 F.2d 1560, 1581 (9th Cir. 1989).

B. <u>Disqualification under Section 455(b).</u>

Section 455(b)(1) provides for disqualification where a judge has " a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." (28 U.S.C. § 455(b)(1).) For present purposes, "personal bias" means a bias derived from extra-judicial origins, as opposed to an opinion formed during the course of litigation. <u>Craven v. Unites States</u>, 22 F.2d 605, 607 (1st Cir. 1927); accord <u>United States v. Carignan</u>, 600 F.2d 762, 763-64 (9th Cir. 1979). It is an "attitude toward [the challenging party] that is significantly different from and more particularized than the normal general feeling of society at large." <u>Mims v. Shapp</u>, 541 F.2d 415, 417 (10th Cir. 1977).

III.     Discussion.

        A. *Ex Parte* Communications.

        The City Movants have documented the extensive *ex parte* communications which the District Judge undertook in Catholic Worker. Much of their showing comes from newspaper articles. (E.g., Naeve Decl., Exs. A-H.) However, the Housing Plaintiffs do no contest that such contacts occurred, and the District Judge has acknowledged them. (E.g., Docket No. 141, pp. 8, 13; Docket No. 146, p. 26.) Once the present action was initiated, the District Judge ceased his *ex parte* contacts. (Naeve Decl, Ex. T, pp. 177-78.)

        It is black-letter law that bias cannot arise from what a judge learns during the course of a litigation. Litkey, 510 U.S. at 555-56; United States v. Grinnel Corp., 384 U.S. 563, 583 (1966). Given the consent of the parties, that extends to what the District Judge learned during his *ex parte* contacts. But that is not a complete answer here.

        The City Movants were not a party to Catholic Worker, and did not give and have not given their consent. The fact that the County is a party to both actions makes it inevitable that the District Judge's contacts have a bearing on this case.

        No judge is endowed with a degree of prescience that would have enabled District Judge to predict that what he learned in one action might have a bearing on a subsequently filed action with different parties. The District Judge bears no fault for the present circumstances, but the Court concludes that he likely

gained access to information and had contacts which would be impermissible in the present action given the City Movants' lack of consent.

B. <u>Statements of the District Judge.</u>

On March 11, 2018, the District Judge issued an order setting a status conference in <u>Catholic Worker</u> directing the parties to attend and "invit[ing]" the mayors and city managers in a list of non-party municipalities to attend. (<u>Catholic Worker</u>, Docket No. 114.) The invitation was extended because the issue of homelessness "implicates all thirty-four cities" in Orange County. (<u>Id.</u>) The City Movants were among those invited. The conference was set for April 3, 2018.

At a hearing two weeks before the status conference, the District Judge commented:

> And I think, though, in the future <u>for the cities who aren't here</u> -- and one outside law firm gave their five cities the advice not to attend, and I won't name those five cities for you -- but <u>it's gonna be hard in the future if this Court can't take action</u>, if we can't resolve this, you know, collegially, and as a community with diverse interest -- but for those cities to come to me and say, You know, I wasn't here -- so I especially appreciate your attendance.

(<u>Catholic Worker</u>, Docket No. 146, p. 14; emphasis supplied.) He further commented:

>     [E]verybody needs to step up coequally. And our constituency would
>     understand that if we were all equal and we didn't have one
>     supervisor stepping up in good faith and one city or a couple cities,
>     maybe that's the political cover.
>
>     And I'm not suggesting that you do that. I can't. I'm a judge, for
>     goodness sakes. But it's one reason to solve it if everybody stepped
>     up. <u>If you don't step up, then you put the Court in writing a position,
>     and I can solve that very easily for you. You don't want me to do
>     that</u>.

(<u>Catholic Worker</u>, Docket No. 141, pp 26-27; emphasis supplied.)

At the status conference, he praised the "good mayors" who attended, and "shamed" the "bad mayors" who did not. (Naeve Decl., Ex. N, p. 71; pagination per docket.) The City Movants did not attend.

Shortly after the present action was filed, the District Judge set a joint status conference in this action and <u>Catholic Worker</u>. He ordered in part:

>     The Court ORDERS the parties in *Housing is a Human Right Orange
>     County et al v. The County of Orange et al*, No.
>     SA-CV-19-00388-DOC-KESx, to appear, and respectfully
>     REQUESTS the Mayor, City Manager, and Police Chief of the
>     Defendant city of Irvine, and the Mayor, City Manager, and Sheriff
>     of the respective Defendant cities of Aliso Viejo, Dana Point, San
>     Juan Capistrano, and San Clemente to appear.

(Catholic Worker, Docket No. 294, p. 1; capitalization per original.) At this point, the City Movants had neither been served nor appeared.[1]

At the status conference, the District Judge noted the absence of the City Movants.[2] (Naeve Decl., Ex. T; Ex. S.) In the process of lamenting the protracted nature of the litigation, he noted:

> THE SECOND THING IS LITIGATION -- AND THAT'S WHY I GOT INVOLVED IN SOMETHING THAT YOU AND I KNOW IS AN ODD PLACE TO BE AS A JUDGE -- AND THAT IS THE LITIGATION SEEMS TO BE NON-ENDING. THERE WILL BE A WINNER AT THE END, BUT THERE WILL BE SUCH AN EXPENDITURE OF MONEY THAT OUR COMMUNITIES WILL BE RUINED BECAUSE THERE'S NO ABILITY TO ENFORCE [the anti-camping ordinances] RIGHT NOW UNDER THE LAW.

(Id., Ex. T, pp. 185-86; capitalization per transcript.)

C. <u>Analysis.</u>

The Court finds that in view of the combination of circumstances, a reasonable observer would conclude based on appearances that the District Judge is not unbiased.

---

[1] At the status conference, the District Judge indicated that he thought the new defendants would have been served by the time of the conference, and apologized for his March 11 order. (Naeve Decl., Ex. T, p. 178.)

[2] He also noted that the absent cities were "not in trouble." (Naeve Decl., Ex. T, p. 13.)

8

The unintended access to information from earlier *ex parte* contacts is at a minimum problematic. However, the direct statements about the City Movants would sway a reasonable observer based on appearances to conclude that the District Judge could not be objective and impartial with respect to the City Movants. Particularly from the standpoint of a reasonable average citizen, United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998), the label of "good" and "bad" mayors has a readily perceived sting. See Ligon v. City of New York, 736 F.3d 118, 124-26 (2d Cir. 2013).[3] So do the statements that municipalities who do not step up will face consequences that they do not desire. The average person does not have the well-developed power of an experienced judge to compartmentalize information and disregard what he needs to disregard in order to render a fair and unbiased decision. See Southern Pacific Communication v. American Tel. & Tel. Co., 740 F.2d 980, 991 (D.C. Cir. 1984).

Similarly, the District Judge's comment about the enforceability of anti-camping statues, while likely reflective of current law,[4] would again sway a reasonable average person to question on the basis of appearances whether the final result in the present action is foreordained. The opinion was expressed in this case, not a prior case. Contrast Clemens v. U.S. Dist. Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005).

The Court's ruling here should not obscure the framework in which many of the events recited above have taken place. In the consensual framework of Catholic Worker, it was proper for the District Judge to take the steps he did. In attempting to achieve a county-wide resolution, he cannot be faulted for using

---

[3] Vacated in part on other grounds, 743 F.3d 362 (2d Cir. 2014).

[4] Martin v. City of Boise, 902 F.3d 584 (9th Cir. 2019).

direct language apprising the parties in that case of realities of the situation and the need to come together. That's what settlement judges do. It is the unintended and unanticipated juxtaposition of this case with <u>Catholic Worker</u> that compels much of the result here.

The City Movants wish to litigate the current dispute. They are entitled to do that before a judicial officer whose impartiality neither the parties nor the public have a reasonable basis to question.

IV. <u>Conclusion.</u>

For reasons set forth above, the Motion to recuse the District Judge is granted.

Dated: June 14, 2019

                                    James V. Selna
                            United States District Judge