# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

Present: The Honorable   PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| Kamilla Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss filed by defendants City of Aliso Viejo ("Aliso Viejo"), City of San Juan Capistrano ("San Juan Capistrano"), and City of San Clemente ("San Clemente") (collectively "Moving Defendants") (Docket No. 72). Moving Defendants challenge the sufficiency of the First Amended Complaint ("1st AC") filed by plaintiffs Housing is a Human Right Orange County ("HHROC"), Orange County Catholic Worker ("OCCW"), Emergency Shelter Coalition ("ESC"), Bruce Stroebel, Duane Nichols, and Darren James (collectively "Plaintiffs"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The Court previously vacated the hearing on the Motion to Dismiss and took the matter taken off calendar.

## I.    Factual and Procedural Background

This action concerns municipal efforts to address the growing population of individuals experiencing homelessness within the community. Those efforts include the enforcement of anti-camping ordinances in some municipalities. Plaintiffs, three unhoused individuals and several organizations dedicated to the provision of services for unsheltered persons, contend that the enforcement of such ordinances violates the civil rights of those experiencing homelessness. Plaintiffs, on behalf of themselves and a putative class of "[a]ll persons who are experiencing homelessness in South County and are unable to access a shelter offering a reasonable accommodation for their disabilities, if any," commenced this action on February 27, 2019. Plaintiffs filed their 1st AC on May 13, 2019 as a matter of right.

The 1st AC asserts a variety of legal theories pursuant to both federal and state statutory and constitutional law against Orange County (the "County"), Moving Defendants, the City of Irvine ("Irvine"), and the City of Dana Point ("Dana Point") (collectively "Defendants"). Specifically, the 1st AC asserts claims against certain municipalities located in the southern portion of Orange County, and Orange County itself, for: (1) violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against all Defendants; (2) violations of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

the First and Fourth Amendments pursuant to 42 U.S.C. § 1983 against all Defendants; (3) violations of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against all Defendants; (4) liability pursuant to California Civil Code section 815.6 for violating the Fourteenth Amendment, California Government Code Section 65583, Article I, section 7 of the California Constitution, and California Civil Code section 52.1 against all Defendants; (5) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 & 12133 against all Defendants; (6) violations of California Civil Code section 52.1 against all Defendants; (7) violations of the Due Process Clauses of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and Article I, section 7 of the California Constitution by plaintiff Darren James against San Clemente; (8) violation of California Government Code section 11135 against all Defendants; and (9) a taxpayers' suit for declaratory and injunctive relief pursuant to California Code of Civil Procedure section 526a against all defendants.  In the 1st AC, Plaintiffs seek injunctive and declaratory relief to prevent Defendants from citing or arresting individuals for "quality of life" violations, including but not limited to camping, property, and loitering laws applicable in public places.  The 1st AC also seeks damages for the individual plaintiffs and attorneys' fees.

The County has filed an Answer to the 1st AC and the deadline for Irvine and Dana Point to respond has not expired.  In their Motion to Dismiss, Moving Defendants contend that Plaintiffs lack standing to pursue their claims against Aliso Viejo and San Juan Capistrano and that the organizational plaintiffs do not have standing to pursue any of their claims, including those alleged against San Clemente.  Moving Defendants also assert that each of the claims asserted in the 1st AC fails to state a viable claim.  In their Reply, Moving Defendants cite to Federal Rule of Civil Procedure 20 in support of their argument that the addition of new individual plaintiffs who reside in Aliso Viejo and San Juan Capistrano would not cure this standing deficiency.  As a result of Moving Defendant's citation to Federal Rule of Civil Procedure 20, the Court ordered the parties to show cause why one or more of the defendants should not be dropped for misjoinder.  Additionally, because some of the state law claims asserted in the 1st AC appeared to raise novel or complex issues of California law, might substantially predominate over the claims over which the Court possesses original jurisdiction, or presented exceptional circumstances, the Court additionally ordered the parties to show cause why the Court should exercise supplemental jurisdiction over one or more of the state law claims.  See 28 U.S.C. §§ 1367(c)(1)-(2) & (c)(4).

Because the joinder and supplemental jurisdiction issues raised in the Court's Order to Show Cause may reduce the remaining issues the Court may need to address in resolving the Moving Defendants' Motion to Dismiss, the Court will address those issues before analyzing Plaintiffs' standing and the sufficiency of the 1st AC's legal claims.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

## II.   <u>Joinder</u>

Plaintiffs have joined their claims against multiple municipalities that each have different relevant ordinances, programs, and circumstances, into a single action.  Federal Rule of Civil Procedure 20(a)(2), which allows for permissive joinder, provides:

> Persons . . . may be joined in one action as defendants if:
>
> (A)   any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; <u>and</u>
>
> (B)   any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2) (emphasis added); <u>see also</u> <u>League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency</u>, 558 F.2d 914, 917 (9th Cir. 1977).  "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim."  <u>Coughlin v. Rogers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997).

In their Response to the Court's Order to Show Cause, Moving Defendants, Irvine, and Dana Point all argue that they are misjoined into a single action.  Because the Court has already adjudicated an Ex Parte Application for Temporary Restraining Order involving San Clemente's anti-camping ordinance and creation of a temporary campground, Moving Defendants suggest that this action should proceed, if at all, only against San Clemente and the County in its role as San Clemente's contracted law enforcement agency.  Plaintiffs contend that their joinder of Defendants is proper:

> All Defendants are properly joined in this action. . . .  [T]he harms suffered by the plaintiffs, including both the individual named plaintiffs and the organizational plaintiffs, stem from the collective failure of the South County cities to provide shelter and the threats of arrest they have made without available beds in the region. As a result, the individual plaintiffs in the class have been forced to seek shelter and other assistance from other organizations in the region and even as far away as Santa Ana.  Because members of the putative class have been subject to threats of arrest in multiple jurisdictions and pushed from one jurisdiction to another, it would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

inefficient and unnecessary to have the case against each jurisdiction proceed as a separate lawsuit with common questions of law and in which each person would need to be deposed separately.

(Docket No. 96 at 3:18-28.)  According to Plaintiffs:

> Here, there is a logical relationship between the claims joined, as the collective, albeit independent, actions of the Defendant cities, have jointly caused the harms suffered by the individual and/or organizational plaintiffs. Each Defendant city, with its "not-in-my-back-yard" approach to criminalizing homelessness, collectively contributes to the harm against plaintiffs, pushing them out of their communities, threatening them with arrest for actions they cannot avoid such as sleeping in public, foreclosing them from the ability of seeking housing in a separate Defendant city, and forcing them to seek shelter in North Orange County, which in turn impacts the organizational plaintiffs.

(Id. at 3:24-4:4.)

While the Court appreciates Plaintiffs' desire to address issues related to individuals without shelter on a regional basis, that desire does not allow the Court to ignore the requirements of Federal Rule of Civil Procedure 20.  Nor does that desire permit Plaintiffs to combine in one action claims against multiple municipalities that Plaintiffs admit act "independently" and each have their own ordinances, different populations of unhoused individuals, programs for addressing the situation, and other local circumstances that require individualized determinations.  See Coughlin, 130 F.3d at 1351 (finding misjoinder where "[e]ach claim raises potentially different issues, and must be viewed in a separate and individual light by the Court.").  Nor do Plaintiffs' concerns about efficiency support the joinder of these municipalities.  Those concerns are belied by the fact that some of these same Plaintiffs and Plaintiffs' counsel have been involved in Orange County Catholic Worker v. Orange County, SA CV 18-155 DOC (JDEx) for at least 18 months and Plaintiffs appear to have elected not to pursue claims against some of the other cities located in the southern part of the County in this action.  Plaintiffs therefore appear to be picking and choosing when to bring these actions and against which entities, and have therefore undermined the "regional" aspect of this litigation and created the inefficiency they claim this joinder allegedly cures.  Nor is there any practical limit to this "regional" approach.  Under Plaintiffs' joinder theory, a mere allegation that the policies of one region or municipality exacerbate a problem in another municipality would allow joinder of all such defendants.  That theory would potentially allow Plaintiffs to join in one action not

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

just certain municipalities in one confined area, but in neighboring counties or states.  Finally, Plaintiffs' concerns about potential inefficient discovery are unavailing because nothing prevents the parties from agreeing to use the discovery conducted in one action in other actions.

Moving Defendants, relying on Wilbur v. Locke, 423 F.3d 1101 (9th Cir. 2005), abrogated on other grounds by Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S. Ct. 2323, 176 L. Ed. 2d 1131 (2010), suggest that the Court must determine that Plaintiffs have standing to pursue their claims against Aliso Viejo and San Juan Capistrano before it considers dropping those defendants for misjoinder.  In Wilbur, the Ninth Circuit concluded that "jurisdictional issues should be decided before reaching" a Federal Rule of Civil Procedure 19 issue involving the joinder of an indispensable party.  Id. at 1106.  Here, however, Moving Defendants do not dispute that the Court possesses, at a minimum, subject matter jurisdiction over at least some of the individual plaintiffs' claims against San Clemente.  Wilbur does not require that the Court resolve jurisdictional issues as to misjoined defendants under Federal Rule of Civil Procedure 20 before dropping those misjoined defendants under Federal Rule of Civil Procedure 21, when it is undisputed that the Court possesses subject matter jurisdiction over at least some of the claims asserted against a defendant.  Requiring the Court to assess Plaintiffs' standing prior to analyzing the misjoinder issue in this situation would waste judicial resources and result in the Court issuing an advisory opinion applicable to a future action against the misjoined and dropped defendants.  The Court declines to adopt this procedure.

For all of the foregoing reasons, the Court concludes that Federal Rule of Civil Procedure 20 does not allow the joinder of Plaintiffs' claims against each of the municipalities into a single action.  Pursuant to Federal Rule of Civil Procedure 21, "[m]isjoinder of parties is not a ground for dismissing an action."  Instead, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "Where parties have been inappropriately joined, it is accepted practice under Rule 21 to dismiss all defendants except for the first named in the complaint; this operates as a dismissal of plaintiffs' claims against other defendants without prejudice."  Armstead v. City of Los Angeles, 66 F. Supp. 3d 1254, 1263-64 (C.D. Cal. 2014) (citing Bravado Int'l Grp. Merch. Servs. v. Cha, No. CV 09-9066 PSG (CWx), 2010 WL 2650432, *5 (C.D. Cal. June 30, 2010)).  However, district courts that dismiss a defendant rather than severing a complaint must consider the prejudice of dismissal to the plaintiff, including whether otherwise timely claims would be lost due to the statute of limitations.  See Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015).  Here, the parties have not stated any prejudice that might result from the dropping and dismissing of the misjoined parties, and because Plaintiffs allege that the civil rights violations at the heart of their claims are ongoing, there does not appear to be a statute of limitations issue.  The Court therefore drops the claims asserted against Aliso Viejo, San Juan Capistrano, Irvine, and Dana Point, and dismisses those defendants without prejudice pursuant to Federal Rule of Civil Procedure 21.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

## III.   Supplemental Jurisdiction

The Court also ordered the parties to show cause why it should exercise supplemental jurisdiction over Plaintiffs' fourth claim for violations of California's Housing Accountability Act and any other claim asserted in the 1st AC that relies on state law.

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)   the claim raises a novel or complex issue of State law,
>
> (2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)   the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." City of Chicago, 522 U.S. at 173, 118 S. Ct. at 534, 139 L. Ed. 2d 525. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" Id. (quoting Cohill, 484 U.S. at 350, 108 S. Ct. at 619, 98 L. Ed. 2d 720).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances." Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." Id. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying Gibbs values are best served by declining jurisdiction in the particular case (the compelling reasons)." Id.

The 1st AC's fourth, sixth, eighth, and ninth claims all allege, at least in part, claims based on California law. The fourth claim, which asserts a claim pursuant to California Civil Code section 815.6, confusingly relies on both the constitutional claims that form the basis for the 1st AC's first, second, and third claims, brought under 42 U.S.C. § 1983, with an attempt to enforce California's Housing Accountability Act and the requirements of California Government Code sections 65580-65589.11. The sixth claim, brought pursuant to California's Bane Act, Cal. Civ. Code § 52.1, and eighth claim, brought pursuant to California Government Code section 11135, appear to rely on the same allegations of civil rights violations as the 1st AC's federal claims. The ninth claim is brought as a "taxpayers' suit" pursuant to California Civil Procedure Code section 526a.

At least at this stage, the Court will continue to exercise supplemental jurisdiction over the 1st AC's sixth and eighth claims. The Court will also continue to exercise supplemental jurisdiction over the 1st AC's fourth claim to the extent it is relying on the same provisions of

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

constitutional and statutory civil rights protections underlying Plaintiffs' federal claims.[1/]  The Court, in the exercise of its discretion, declines to exercise supplemental jurisdiction over the fourth claim to the extent it seeks to enforce the Housing Accountability Act or the ninth claim brought as a taxpayers' suit.

Specifically, the Court concludes that resolution of the Housing Accountability Act claim would require significant analysis of zoning, general plan, and other issues that are distinct from the federal constitutional and statutory civil rights claims over which the Court possesses original jurisdiction.  The Housing Accountability Act is also part of a detailed state regulatory scheme involving the relationship between both the State of California and its municipalities and between the municipalities themselves that, in our federal system, are the proper subject of state rather than federal judicial review.  Indeed, according to the 1st AC, plaintiff ESC has already been involved in litigation concerning San Clemente's violations of the Housing Accountability Act in the Orange County Superior Court.  (1st AC ¶ 84.)  The Court additionally notes that Moving Defendants state in their Motion to Dismiss that "it is far from clear that a direct challenge to the housing element could be filed in federal court at all:  The statue appears to contemplate exclusive enforcement through a writ of mandate sought in state court."  (Docket No. 72 at 16:1-4 (citing Cal. Gov' t Code § 65751); see also Docket No. 87 at 7:20-21 ("At every turn, Plaintiffs' novel use of the Tort Claims Act [as a vehicle to enforce the Housing Accountability Act] fails as a matter of law.").

The 1st AC's ninth claim is brought pursuant to California Civil Procedure Code section 526a, which provides:

> An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or within one year before the commencement of the action, has paid, a tax that funds the defendant local agency . . . .

---

[1/]     Although the Court is, at this stage, continuing to exercise supplemental jurisdiction over these claims, the Court notifies the parties that, to avoid juror confusion and in the interests of comity and federalism, it is the Court's usual practice in actions alleging both federal and state civil rights claims, to try the federal claims, sever the state law claims for trial, and then decline to exercise supplemental jurisdiction over the remaining state law claims.  The Court has not, however, made a determination that it will adopt this practice in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

Cal. Civ. Proc. Code § 526a.  The basis for, and relief sought in, this claim appears to shift throughout both the 1st AC and Plaintiffs' Opposition to Moving Defendants' Motion to Dismiss.  At times, Plaintiffs appear to have the Court review the legality of San Clemente's spending decisions.  At other times, Plaintiffs appear to rely on the taxpayers' suit claim only to bolster their standing allegations.  To the extent Plaintiffs rely on the taxpayers' suit claim to support their standing to pursue their claims, the Ninth Circuit has already determined that California Civil Procedure Code section 526a "does not suffice under Article III to demonstrate an injury in fact" for federal standing purposes.  Cantrell v. City of Long Beach, 241 F.3d 674, 684 (9th Cir. 2001).  Moreover, to the extent Plaintiffs seek to have this Court review San Clemente's decisions concerning the manner in which it spends public funds, as opposed to award damages or enjoin further civil rights violations should Plaintiffs prevail on a claim that entitles them to damages or injunctive relief, such a claim raises federalism concerns and would require the Court to involve itself in factual and legal matters that are far different from the civil rights claims over which the Court possesses original jurisdiction.

The Court therefore concludes that the Housing Accountability Act and taxpayers' suit claims raise "novel and complex" issues of California law and substantially predominate over the claims over which the Court possesses original jurisdiction.  See 28 U.S.C. §§ 1367(c)(1)-(c)(2).  The existence of prior related litigation in the Orange County Superior Court and the detailed regulatory requirements contained within the Housing Accountability Act claim also present extraordinary circumstances and compelling reasons for the Court to decline supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c)(4).  Declining to exercise supplemental jurisdiction over both of these claims is consistent with the interests of economy, convenience, fairness, and comity.  The Court therefore declines to exercise supplemental jurisdiction over the 1st AC's fourth claim to the extent it seeks to enforce the Housing Accountability Act and ninth claim and dismisses those claims without prejudice.

## IV. **Motion to Dismiss**

### A. **Legal Standards**

#### 1. **Federal Rule of Civil Procedure 12(b)(1)**

Article III of the United States Constitution requires that a litigant have standing to invoke the power of a federal court.  Because Article III's standing requirements limit subject matter jurisdiction, a plaintiff's standing to pursue a claim is properly challenged by a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss.  See Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121-22 (9th Cir. 2010).  For the purpose of ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint and

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

must construe the complaint in favor of the complaining party. <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1068 (9th Cir. 2011).

Rule 12(b)(1) jurisdictional attacks can be either facial or factual. In a facial attack, the allegations are presumed true and the "challenger asserts that the[y] are insufficient on their face to invoke federal jurisdiction." <u>Safe Air For Everyone v. Meyer</u>, 373 F. 3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u> Courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." <u>Augustine v. United States</u>, 704 F.2d 1074, 1077 (9th Cir. 1983); <u>see also Safe Air</u>, 373 F. 3d at 1039; <u>Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement</u>, 524 F. 3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when 'the question of jurisdiction and the merits of the action are intertwined,' dismissal for lack of subject matter jurisdiction is improper.").

The Supreme Court has held that to have standing under the Constitution, a party must show it has suffered an "injury in fact," that there is a "causal connection between the injury" and the defendant's complained-of conduct, and that it is likely "that the injury will be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136–37, 119 L. Ed. 2d 351 (1992). In <u>Spokeo v. Robins</u>, __ U.S. __, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), the Supreme Court explained:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

136 S. Ct. at 1547. At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." <u>Id.</u> (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975)).

To demonstrate an "injury in fact," a plaintiff must establish an "invasion of a legally protected interest which is (a) concrete and particularized [citations] and (b) 'actual or imminent, not "conjectural" or 'hypothetical.'" <u>Lujan</u>, 504 U.S. at 560, 112 S. Ct. at 2136 (citations omitted). An organization has "'direct standing to sue [when] it show[s] a drain on its resources

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

from both a diversion of its resources and frustration of its mission.'" Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1219 (9th Cir. 2012) (quoting Fair Hous. of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002)).  An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.  It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010).

## 2.    Federal Rule of Civil Procedure 12(b)(6)

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e).  The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).  The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted).  Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965.  For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted).  In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### B.   Analysis

Because the Court has dropped all of the defendants except San Clemente and the County, the Court will analyze the sufficiency of the 1st AC's claims against only San Clemente.  San Clemente challenges the sufficiency of each of the 1st AC's claims asserted against it and the standing of the organizational plaintiffs.  San Clemente does not, in this Motion to Dismiss, challenge the standing of Duane Nichols and Darren James, both of whom are alleged to be individuals experiencing homelessness who reside in San Clemente, or otherwise challenge the Court's jurisdiction to assess the sufficiency of the substantive claims alleged in the 1st AC over which the Court possesses original jurisdiction and is exercising supplemental jurisdiction.  Because it would be unnecessary to assess whether the organizations have standing if the claims fail as a matter of law and leave to amend would be futile, the Court will first address whether the claims are viable before addressing the standing issue.

### 1.   Constitutional Claims

The 1st AC asserts six claims for violations of federal and state constitutional rights over which the Court possesses original jurisdiction and, at this stage, has elected to exercise supplemental jurisdiction.  Those claims are:  (1) the first claim for violations of the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; (2) the second claim for violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983; (3) the third claim for violations of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (4) the fourth claim for liability pursuant to California Civil Code section 815.6 for violating the Fourteenth Amendment, Article I, section 7 of the California Constitution, and California Civil Code section 52.1 (but not the portions of that claim alleging violations of the Housing Accountability Act over which the Court has declined to exercise supplemental jurisdiction); (5) the sixth claim for violations of California Civil Code section 52.1; and (6) the seventh claim for violations of the Due Process Clauses of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and Article I, section 7 of the California Constitution brought only on behalf of plaintiff Darren James.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

### a.    Eighth Amendment Claim

In <u>Martin v. City of Boise</u>, 920 F.3d 584 (9th Cir. 2019), the Ninth Circuit concluded that "the Eighth Amendment prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter." <u>Id.</u> at 616. The Ninth Circuit stated that "just as the state may not criminalize the state of being 'homeless in public places,' the state may not 'criminalize conduct that is an unavoidable consequence of being homeless — namely sitting, lying, or sleeping on the streets.'" <u>Id.</u> at 617 (quoting <u>Jones v. City of Los Angeles</u>, 444 F.3d 1118, 1137 (9th Cir. 2006), <u>vacated</u>, 505 F.3d 1006 (2007)).  The Ninth Circuit clarified, however, that its "holding is a narrow one" and "'we in no way dictate to the City that it must provide sufficient shelter for the homeless, or allow anyone who wishes to sit, lie, or sleep on the streets . . . at any time and at any place.'"  <u>Id.</u> (quoting <u>Jones</u>, 444 F.3d at 1138).  As the Ninth Circuit panel explained:

> Naturally, our holding does not cover individuals who do have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it.  Nor do we suggest that a jurisdiction with insufficient shelter can never criminalize the act of sleeping outside.  Even where shelter is unavailable, an ordinance prohibiting sitting, lying, or sleeping outside at particular times or in particular locations might well be constitutionally permissible.  <u>See</u> <u>Jones</u>, 444 F.3d at 1123.  So, too, might an ordinance barring the obstruction of public rights of way or the erection of certain structures.  Whether some other ordinance is consistent with the Eighth Amendment will depend, as here, on whether it punishes a person for lacking the means to live out the "universal and unavoidable consequences of being human" in the way the ordinance prescribes.  <u>Id.</u> at 1136.

<u>Id.</u> at 617 n.8.  According to the Ninth Circuit, "as long as there is no option of sleeping indoors, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter."  <u>Id.</u> at 617.

In February 2018, the San Clemente City Council adopted as part of the City's municipal code an "anti-camping" ordinance.  The anti-camping ordinance provided:

> Except as otherwise provided by this code or by resolution of the City Council, it is unlawful [for] any person to engage in camping:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

      A.      Upon any land or easement owned, operated, or managed by the City;

      B.      Upon any land for which the . . . Zoning, the General Plan, or a specific plan designates as private open space and prohibits camping; and

      C.      Upon any land designated by the Fire Chief as a fire risk area. Fire risk areas include, but, are not limited to, areas in or near a very high fire hazard severity zone identified by the City or by the California Department of Forestry and Fire Protections, areas in or near a wildland-urban interface, and areas in or near to a heightened fire rating by the Orange County Fire Authority.

San Clemente Municipal Code ("SCMC") § 8.86.010. The SCMC defines "camping" to mean "to pitch or occupy camp facilities or to use camp paraphernalia," defines "camp facilities" to include "tents, huts, or other temporary shelters," and defines "camp paraphernalia" to include "tarpaulins, cots, beds, sleeping bags, hammocks, non-City designated cooking facilities, or similar equipment." Id.

Following the Ninth Circuit's issuance of its initial opinion in City of Boise in September 2018, San Clemente enacted an ordinance in March 2019 providing:

> Absent exigent circumstances relating to immediate threats to the public health, safety, or welfare, the provisions of this chapter will not be enforced against indigent homeless persons sitting, lying, or sleeping on public property when no alternative shelter is available in accordance with the holding in Martin v. City of Boise, (9th Cir. 2018) 902 F.3d 1031.

SCMC § 8.86.040.

Plaintiffs filed the 1st AC on May 13, 2019. Eight days later, on May 21, 2019, the San Clemente City Council unanimously enacted an "urgency ordinance" to modify the City's anti-camping ordinance. According to the urgency ordinance:

> Section 3.    The City Council hereby finds pursuant to SCMC Section 8.86.040 that "exigent circumstances relating to immediate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

threats to the public health, safety, or welfare" require enforcement against all persons (including indigent homeless persons) of the provisions of SCMC Chapter 8.86 (prohibiting camping on public property), except that such enforcement shall not be brought against persons camping on public property designated for such purposes pursuant to Section 4 of this Ordinance.

Section 4.     That the City property designated in Attachment 1 hereto is hereby made available as the sole public area in the City available for camping purposes by those persons experiencing homelessness or otherwise unable to obtain shelter.

Section 5.     Under the direction of the City Manager, the City may adopt rules and regulations for the occupancy, use, and operation of the camping area and conduct therein and shall circulate and post said rules and regulations at the area.

(Docket 72-2, Ex. 3.)  Through the urgency ordinance, the City designated an approximately 0.31 acre portion of vacant lot adjacent to the City's water reclamation plant as a "temporary campground" at which unhoused individuals could camp without risk of violating the anti-camping ordinance.  The City relocated individuals without homes to the temporary campground on May 24, 2019.

Because Plaintiffs filed the 1st AC before San Clemente enacted the urgency ordinance, the 1st AC does not include any allegations about the urgency ordinance.  Although San Clemente urges the Court to "make clear [in any order granting Plaintiffs leave to amend] that the Urgency Ordinance is constitutional on its face," the Court declines San Clemente's invitation to issue an advisory opinion on an ordinance and whatever supporting facts Plaintiffs might allege in a Second Amended Complaint based on a 1st AC that does not contain any such allegations.  The Court therefore dismisses the 1st AC's first claim for violations of the Eighth Amendment with leave to amend.

San Clemente also challenges the sufficiency of the individual plaintiffs' claims for damages for violations of their Eighth Amendment rights.  According to San Clemente, because the 1st AC does not allege that San Clemente has ever cited either Duane Nichols or Darren James for violations of the anti-camping ordinance, the individuals have not suffered a violation of their constitutional rights, see West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 420 (1981) ("To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

deprivation was committed by a person acting under color of state law."), and have therefore failed to state a claim for retrospective relief, even if they may, eventually, be able to state a claim for prospective relief.  See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2342, 189 L. Ed. 2d 246 (2014) ("One recurring issue in our cases is determining when the threatened enforcement of a law creates an Article III injury.  When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law. . . .  Instead, we have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent.").  Plaintiffs, however, contend that they are entitled to damages because they have been threatened with arrest.  (1st AC ¶¶ 89-90, 92.)  The 1st AC's allegations of threats are insufficient to state a claim for damages.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("A mere threat . . . trivializes the eighth amendment to believe a threat constitutes a constitutional wrong. . . .  We find no case that squarely holds a threat to do an act prohibited by the Constitution is equivalent to doing the act itself.").  The Court concludes that the 1st AC fails to allege sufficient facts to support the individual plaintiffs' claims for damages.  The Court therefore dismisses that claim with leave to amend.[2]

Finally, the Court notes that plaintiff OCCW recently entered into a settlement agreement with the County to resolve claims in the related action, Orange County Catholic Worker v. Orange County, Case No. SA CV 18-155 DOC (JDEx) (Docket No. 318).  It is unclear what effect that settlement has on Plaintiffs' claims against the County in this action.  In any future Complaint, Plaintiffs shall clearly delineate the claims and legal theories Plaintiffs allege against the County and the factual circumstances supporting any such claims.

**b.     First and Fourth Amendment Claims**

The 1st AC's second claim alleges claims pursuant to 42 U.S.C. § 1983 for violations of the First and Fourth Amendments.  In support of this claim, the 1st AC alleges:

On information and belief, each of the Defendants, through their employees and agents, ordered individuals in their respective jurisdictions who appear to law enforcement to be homeless to move along from public places where they have a right to be pursuant to the First Amendment.  The detentions and interrogations constitute an unlawful seizure as they were done without reasonable suspicion or probable cause to believe that the individual had or was about to

---

[2]     To the extent the individual plaintiffs also seek damages under their other constitutional claims, those claims fail for the same reason and are, similarly, dismissed with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

> commit a crime other than a purported violation of a law necessitated
> by their status as homeless individuals plus the lack of available
> shelter.  Plaintiffs, as everyone else, have a First Amendment right to
> be present in a public space, to "loiter" in a public space for no
> reason and to not be excluded from that space by threat, intimidation
> or coercion for alleged crimes directly related to their status as
> individuals experiencing homelessness who have no place to live
> other than in public spaces.

(1st AC ¶ 114.)  The Court concludes that these conclusory allegations are insufficient to state a viable claim under either the First or Fourth Amendments.  The 1st AC does not contain well-pleaded allegations of a First Amendment violation of expressive or associational conduct.  See Roulette v. City of Seattle, 97 F.3d 300, 305 (9th Cir. 1996) ("By its terms, the ordinance here prohibits only sitting or lying on the sidewalk. . . .  [T]hese are not forms of conduct integral to, or commonly associated with, expression.  We therefore reject plaintiffs' [First Amendment] facial attack on the ordinance.").[3/]  Nor does the 1st AC allege well-pleaded facts of an unconstitutional seizure or other conduct that violates the Fourth Amendment.  See Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) ("Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. . . .  [W]e have held repeatedly that mere police questioning does not constitute a seizure."); see also Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1879, 20 L. Ed. 2d 889 (1968).  The Court therefore dismisses the 1st AC's second claim with leave to amend.

### c.      Fourteenth Amendment Claim

The 1st AC's third claim for violations of the Fourteenth Amendment alleges that "Defendants' laws violate the Fourteenth Amendment because they are so vague as to be impossible to comply with."  (1st AC ¶ 118.)  The 1st AC also alleges that "the failure and refusal of the Defendants, and each of them, to comply with the mandatory duty to provide for the needs of the class members to stay where they are protected from the adverse weather elements, puts them in immediate danger and constitutes a state-created danger to a community that predominantly suffers from one or more significant disabilities."  (Id. at ¶ 120.)

---

[3/]      Plaintiffs' reliance on Justin v. City of Los Angeles, Case No. CV 00-12352 LGB (AIJx), 200 WL 1808426, at *11 (C.D. Cal. Dec. 5, 2000), is unpersuasive.  Justin, which was issued on an ex parte application for temporary restraining order, contains no discussion or citations to authority concerning the First Amendment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

"[T]he Fourteenth Amendment's Due Process Clause generally does not confer any affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." Patel v. Kent Sch. Dist., 648 F.3d 965, 971 (9th Cir. 2011). One exception to this rule is "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a known or obvious danger' (the state-created danger exception)." Id. at 971-72. "Deliberate indifference is a 'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. at 974 (quoting Bryan Cty. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). According to the Ninth Circuit, the deliberate indifference standard is satisfied when "the defendant knows that something is going to happen but ignores the risk and exposes someone to it." L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996). The state-created danger "exception applies only where there is 'affirmative conduct on the part of the state in placing the plaintiff in danger.'" Patel, 648 F.3d at 974 (quoting Munger v. City of Glasgow, 227 F.3d 1082, 1086 (9th Cir. 2000)).

Because San Clemente's urgency ordinance was enacted after Plaintiffs filed the 1st AC, Plaintiffs have no well-pleaded allegations concerning the alleged vagueness of the operative ordinance. Nor does the 1st AC otherwise state sufficient well-pleaded allegations against San Clemente on Plaintiffs' state-created danger theory. See Cobine v. City of Eureka, 250 F. Supp. 3d 423, 433 (N.D. Cal. 2017) (dismissing with leave to amend a Due Process Clause claim brought by plaintiffs who failed to satisfactorily allege deliberate indifference where homeless individuals were removed from one area but permitted to sleep in a City-owned parking lot or offered temporary emergency shelter). Plaintiffs have not sufficiently alleged well-pleaded facts plausibly suggesting that the City has taken the type of affirmative steps to place an individual in a known and likely danger to satisfy the deliberate indifference standard. Additionally, the difficulties the homeless individuals camping at the temporary campground may face are largely identical to those they would face while camping elsewhere in the City. See id. ("In the absence of particular allegations that the state action put the Plaintiffs in an inherently dangerous situation, the Court is bound to find that the generalized dangers of living on the street preexisted Plaintiffs' relocation . . . ."). The Court therefore dismisses this claim with leave to amend.

### d.   Darren James' Individual Claim for Violations of the Fifth and Fourteenth Amendments

The 1st AC's seventh claim is brought on behalf of only Darren James against San Clemente. James alleges that in early February 2019, "all of his possessions were taken from the location where he left them daily for two years. He approached a person in the area that he understood to be a [San Clemente] City employee, asked about his possessions, and was informed that the City did not retain the property." (1st AC ¶ 91.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); see also id. at 691, 98 S. Ct. at 2036 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").   "There are three ways to show a policy or custom of a municipality:  (1) by showing 'a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;' (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;' or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'"  Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002)).

In the absence of a specific unconstitutional custom or policy, a plaintiff may attempt to impose liability on a municipality for a constitutional injury through a second route to municipal liability:

> [A] plaintiff need not allege that the municipality itself violated someone's constitutional rights or directed one of its employees to do so.  Instead, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional, the municipality did not direct the employee to take the unconstitutional action, and the municipality did not have the state of mind required to prove the underlying violation.

Gibson v. County of Washoe, 290 F.3d 1175, 1186 (9th Cir. 2002) (citing City of Canton v. Harris, 489 U.S. 378, 387-89, 109 S. Ct. 1197, 1204-05, 103 L. Ed. 2d 412 (1989)).  Under this second route to municipal liability, a plaintiff must show:  (1) that a municipal employee violated the plaintiff's rights; (2) that the municipality has customs or policies that amount to deliberate indifference (as that phrase is defined by Canton, 489 U.S. at 387, 109 S. Ct. at 1204); and (3) that these policies were the moving force behind the violation of the plaintiff's constitutional rights, in the sense that the municipality could have prevented the violation with an appropriate policy.  See Gibson, 290 F.3d at 1193.  Under either method of establishing municipal liability, an official policy or custom cannot be established by random acts or isolated events.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1443–44 (9th Cir. 1989).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

Here, even assuming that James has plausibly alleged that someone employed by San Clemente took James' property in violation of his Fifth and Fourteenth Amendment rights, the 1st AC does not allege any well-pleaded facts that San Clemente maintains an unconstitutional policy or custom. Indeed, San Clemente has requested that the Court take judicial notice of its ordinance that allows San Clemente to impound property that is left unattended for more than 24 hours and allows the owner of the property to recover it thereafter. See SCMC § 8.86.020. In reviewing the 1st AC's allegations, the Court concludes that James does not allege well-pleaded facts that San Clemente has a policy that amounts to deliberate indifference. Instead, at most, James alleges that, on a single occasion, San Clemente took his belongings. Because the 1st AC alleges only an isolated event, James' Monell claim against San Clemente fails to allege sufficient well-pleaded facts to state a viable claim. See Thompson, 885 F.2d at 1443-44. The Court therefore dismisses this claim with leave to amend.

### e.     Derivative State Law Constitutional Claims

To the extent the 1st AC's fourth claim for liability pursuant to California Civil Code section 815.6 and sixth claim for constitutional violations pursuant to California Civil Code section 52.1 seek to enforce the constitutional claims Plaintiffs' assert in their first through third claims (as opposed to those portions of the fourth claim seeking to enforce the Housing Accountability Act over which the Court has declined to exercise supplemental jurisdiction), those claims are derivative of the underlying constitutional claims and fail to state viable claims for the same reasons already identified by the Court. The Court therefore dismisses the fourth and sixth claims with leave to amend. Plaintiffs do not have leave to amend to reassert the Housing Accountability Act claim in this action.

### 2.     Disability Discrimination Claims

The 1st AC's fifth claim alleges violations of the ADA and the eighth claim asserts a claim for disability discrimination under California Government Code section 11135. According to the 1st AC, "Defendants . . . have failed to provide for the needs of disabled homeless individuals in their jurisdictions and have, instead, offered services that fail to provide reasonable accommodations to people experiencing homelessness . . . ." (1st AC ¶ 130.) In their Opposition to the Motion to Dismiss, Plaintiffs ask for leave to amend "to clarify the Americans with Disabilities Act claims" and to add facts concerning the ways in which San Clemente's temporary campground violates the ADA. (Docket No. 84 at 13:14-18.)

The ADA does not impose upon a municipality an obligation "to create new programs that provide heretofore unprovided services to assist disabled persons. . . . Nor, ordinarily, must public entities make modifications that would fundamentally alter existing programs and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|
| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. | | |

services administered pursuant to policies that do not facially discriminate against the disabled." Townsend v. Quasim, 328 F.3d 511, 518 (9th Cir. 2003). Instead, "entities are required only to make reasonable changes in existing policies in order to accommodate individuals' disabilities." Id. The 1st AC does not identify any specific programs or services provided by San Clemente or state well-pleaded facts alleging that any such programs or services fail to provide reasonable accommodations. The facts Plaintiffs wish to add concerning the alleged ADA violations at the temporary campground were not available to them when they filed the 1st AC. The Court therefore dismisses the fifth and eighth claims with leave to amend.

**3.      Organizational Standing**

Because the Court has concluded that it will dismiss the substantive constitutional and disability discrimination claims, it will address San Clemente's contention that HHROC, OCCW, and ESC have failed to allege sufficient facts to support their standing to pursue the claims asserted in the 1st AC. Specifically, San Clemente correctly states that the 1st AC contains no well-pleaded allegations explaining how San Clemente's actions and omissions have caused a drain on the resources "from both a diversion of its resources and frustration of its mission" for OCCW and ESC. Fair Hous. Council of San Fernando Valley, 666 F.3d at 1219. The 1st AC does allege that HHROC "is required to shift and expend resources to providing immediate direct services . . . and redirected its time and money from its primary focus of achieving supportive, affordable and permanent housing for people experiencing homelessness in the County." (1st AC ¶ 81.) As San Clemente observes, however, Plaintiffs have not alleged that San Clemente has an affirmative constitutional obligation to provide shelter to individuals experiencing homelessness, so it is unclear how the enforcement of an anti-camping ordinance, or the creation of the temporary campground, causes an injury to the organizations. Nor do the organizational plaintiffs allege an injury or otherwise explain how they have standing to pursue the disability discrimination claims alleged in the 1st AC. At a minimum, the 1st AC's conclusory allegations do not adequately allege the "causal connection between the injury" and the defendant's complained-of conduct, or that it is likely "that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61, 112 S. Ct. at 2136–37, 119 L. Ed. 2d 351. Nor do the organizational standing allegations contained in the 1st AC satisfy Plaintiffs' burden to "clearly allege" facts demonstrating each element of standing. Spokeo, 136 S. Ct. at 1547. The Court therefore dismisses the organizational plaintiffs for lack of standing with leave to amend.

**Conclusion**

For all of the foregoing reasons, the Court drops Aliso Viejo, San Juan Capistrano, and Irvine for misjoinder pursuant to Federal Rule of Civil Procedure 21 and dismisses those defendants without prejudice. The Court also declines to exercise supplemental jurisdiction over

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SA CV 19-388 PA (JDEx) | Date | August 12, 2019 |
|---|---|---|---|

| Title | Housing is a Human Right Orange County, et al. v. County of Orange, et al. |
|---|---|

Plaintiffs' allegations of violations of the Housing Accountability Act and its taxpayers' suit claim brought pursuant to California Civil Procedure Code section 526a. The Court dismisses the remaining claims with leave to amend. The Court also dismisses the claims of HHROC, OCCW, and ESC for lack of standing with leave to amend. Plaintiffs' Second Amended Complaint, if any, shall be filed by no later than September 16, 2019. Failure to file a Second Amended Complaint by that date may, without further warning, result in the dismissal of this action with prejudice. The Second Amended Complaint shall not include any new or different defendants, claims, causes of action, or legal theories other than those specifically authorized in this Order, without leave of this Court.

IT IS SO ORDERED.